IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**JOVONDA DESHUN BONTON**                                                         **PLAINTIFF**

v.                          **CASE NO. 4:16-CV-00889 BSM**

**ARKANSAS STATE HOSPITAL**                                                       **DEFENDANT**

## ORDER

Defendant Arkansas State Hospital's ("ASH") motion for summary judgment [Doc. No. 35] is granted, and this case is dismissed with prejudice.

### I. BACKGROUND

Plaintiff Jovonda Bonton brings this lawsuit alleging that ASH, his former employer, discriminated against him on the basis of his race and his disability. The undisputed facts[1] are as follows:

Bonton is a black man who began working for ASH in February 2009 as a full-time unit safety officer. Def.'s Resp. to Pl. Statement of Disputed F. ("Def.'s Facts") ¶ 1, Doc. No. 52. On July 31, 2009, he suffered a leg injury from participating in a patient-staff basketball game. *Id.* ¶ 3. He required multiple surgeries and physical therapy to repair the damage to his leg. *Id.* ¶¶ 4–5. After he returned to work, he was placed on "light duty"

---

[1] Although Bonton denies some of these facts in his response, the ones relied upon herein are considered undisputed because he fails to offer support for his position that the fact is material and in dispute. *See* Fed. R. Civ. P. 56(c)(1) (requiring that a party support their assertion that a genuine factual dispute exists with affidavits or declarations, admissions, answers to interrogatories, depositions, documents, or other materials). Other facts are considered undisputed because they are based on Bonton's deposition testimony, and he may not create a dispute of fact based solely on contrary statements in his later affidavit. *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030–31 (8th Cir. 2000).

because he could not perform the standard duties of a unit safety officer. *Id.* ¶ 7. He was taken off "light duty" in 2010, but he applied for further accommodations under the Americans with Disabilities Act ("ADA"). *Id.* ¶¶ 8–9. His requested accommodations were granted, but he was unable to continue working as a unit safety officer. *Id.* ¶ 10. Instead, he was appointed as an inventory control technician for six months, *id.* ¶ 11, and was later promoted to inventory control manager. *Id.* ¶ 12. Bonton was eventually promoted to warehouse manager. *Id.* ¶ 13; *see also* Pl. Resp. to Def.'s Mot. Summ. J. Ex. 1 ("Bonton Aff.") at 2, Doc. No. 50-1. In this position, he reported directly to Gary Hollis, ASH's chief financial officer. Def.'s Facts ¶¶ 16–17, 19. As part of his job duties, Bonton attended weekly meetings located in ASH's finance department. *Id.* ¶ 20. Because of his leg injury, Bonton would use a hospital vehicle, if one was available, to travel from his office in the warehouse to the finance department, which was located in a separate building. *Id.* ¶ 22; *see also id.* Ex. 1 ("Bonton Dep.") 32:20–33:23.

On September 9, 2015, Hollis informed Bonton that Bonton would be responsible for phasing out the hospital's use of the warehouse to store supplies. *See id.* ¶ 24. Bonton's office was subsequently relocated from the warehouse to the finance department. *Id.* ¶ 25. Bonton reminded Hollis about his leg injury and that he needed accommodations for his work, particularly with respect to traveling between the warehouse and the finance department. *Id.* ¶ 29. It appears that Bonton would have preferred to remain in the warehouse to oversee his staff and travel to the finance department as needed. *See* Pl. Br.

Opp'n Mot. Summ. J. at 2, 4–5, Doc. No. 51. Bonton gave ASH a letter from his doctor noting certain physical restrictions regarding his ability to walk for extended periods of time. Def.'s Facts ¶ 42; *see also* Pl. Resp. Def. Mot. Summ. J. Ex. 5, Doc. No. 50-5.

To accommodate Bonton's leg injury, Hollis recommended that he limit his trips to the warehouse to two or three times per week. Def.'s Facts ¶ 45; Bonton Dep. 68:3–13. Bonton testified that this accommodation was sufficient to meet his physical needs and the restrictions noted by his doctor. Def.'s Facts ¶ 49; Bonton Dep. 74:12–24. A few months later, Bonton sent an email to Hollis giving his two weeks notice that he was resigning. Def.'s Facts ¶ 50. Hollis accepted Bonton's resignation. *Id.* ¶ 51. Bonton later asked Hollis if he could rescind his resignation, but Hollis denied this request. *Id.* ¶¶ 58–59.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.*

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact

undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). All reasonable inferences must be drawn in a light most favorable to the non-moving party, *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007), but a plaintiff's own self-serving, conclusory allegations in an affidavit or deposition, standing alone, are insufficient to defeat summary judgment. *Haas v. Kelly Services*, 409 F.3d 1030, 1034 (8th Cir. 2005). Finally, the evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

Bonton asserts that ASH unlawfully discriminated against him on the basis of his race and disability and that ASH denied him reasonable accommodations. Summary judgment is granted because Bonton has failed to establish a prima facie case for any of his claims.

A. <u>Adverse Employment Action</u>

Bonton fails to make a prima facie showing of an adverse employment action, which is an element of his prima facie cases for discrimination under Title VII and the ADA. *See, e.g.*, *Tenge v. Phillips Modern Ag. Co.*, 446 F.3d 903, 910 (8th Cir. 2006) (Title VII); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 948 (8th Cir. 1999) (ADA). Moreover, nothing in the record supports his constructive discharge theory. Instead, it appears that Bonton voluntarily resigned from ASH.

An adverse employment action is a change in an employee's working conditions that causes a material employment disadvantage. *Spears v. Missouri Dep't of Corr. & Human*

*Res.*, 210 F.3d 850, 853 (8th Cir. 2000). For example, "[t]ermination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not." *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 633 (8th Cir. 2016) (quoting *Spears*, 210 F.3d at 853). Constructive discharge is recognized as a type of adverse employment action and "occurs when an employee resigns after the employer has created an intolerable working environment in a deliberate attempt to compel such a resignation." *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 706 (8th Cir. 2005) (quoting *Tatum v. City of Berkeley*, 408 F.3d 543, 551 (8th Cir. 2005)).

Bonton asserts that he suffered an adverse employment action when Hollis relocated Bonton's office from the warehouse to the finance department. Pl. Br. Opp'n Mot. Summ. J. at 4–5. He says that this move caused pain and stress to his leg because he had to travel frequently to the warehouse. Bonton Aff. at 4–5. Bonton, however, admits that he would use a hospital vehicle, if one was available, to make this trip. Def.'s Facts ¶ 22; Bonton Dep. 32:20–33:23. He also admits that he received an accommodation from Hollis that limited the number of times per week that he had to go to the warehouse, Def.'s Facts ¶ 45; Bonton Dep. 68:3–13, and that this accommodation satisfied his physical limitations and the restrictions noted by his doctor. Bonton Dep. 74:12–24. Although Bonton and his wife later state that Hollis and others at ASH denied his request for accommodations after the office relocation,

5

Bonton Aff. at 5; Pl. Resp. to Def.'s Mot. Summ. J. Ex. 2 at 5, Doc. No. 50-2, these assertions are squarely contradicted by Bonton's prior deposition testimony and documentary evidence in the record. Bonton Dep. 70:10–72:11, 74:12–24; Def. Statement of Facts Ex.1 at 76, Doc. No. 37-1; *see Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1364–66 (8th Cir. 1983) (holding that a party cannot avoid summary judgment by contradicting prior deposition testimony with affidavits in an attempt to create a dispute of fact). These self-serving affidavits, made after his deposition and presumably for the purpose of defeating summary judgment, are not relied upon. *See also Haas*, 409 F.3d at 1034.

It is unclear from the record whether Bonton traveled to the warehouse more than two or three times per week, and if so, why he was doing this in light of his accommodation and the stress to his leg. Bonton asserts that he needed to be physically present in the warehouse more than two or three times a week for "accountability." *See* Bonton Dep. 70:10–72:11, 74:12–24. He does not further explain what he means by this. Even if Bonton felt that he needed to go to the warehouse more frequently to oversee his staff, it is undisputed that he was told by Hollis, his supervisor, that he need only travel there two or three times per week.

Therefore, while changing offices may have been inconvenient, it was not an adverse employment action. *See Kelleher*, 817 F.3d at 633. Moreover, it does not support a theory of constructive discharge. "An employee claiming constructive discharge shoulders a substantial burden," *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 826 (8th Cir. 2017) (citation omitted), and he "may not be unreasonably sensitive to [his] working conditions." *West v.*

6

*Marian Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995) (quotation omitted). Although Bonton argues that the change in offices, in part, created intolerable working conditions that left him no choice but to resign, this argument is objectively unreasonable in light of the fact that Bonton received an accommodation that, by his own admission, adequately met his physical needs and the restrictions noted by his doctor.

Moreover, other issues cited by Bonton were not adverse employment actions and fail to support his constructive discharge theory. First, Bonton argues that ASH required him to get a second or updated medical opinion concerning his disability and go through the interactive process twice. These requirements, however, do not constitute adverse employment actions or otherwise violate the ADA. *See Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1043 (8th Cir. 2005) ("[A]n employer's request for a second opinion . . . does not constitute a material change in employment."). Second, Bonton points to the affidavit of Michael Anderson as evidence that Bonton was constructively discharged. Pl. Resp. to Def.'s Mot. Summ. J. Ex. 3 ("Anderson Aff.") at 2, Doc. No. 50-3. In his affidavit, Anderson, another former employee of ASH, asserts that he was told by another employee that Bonton was not going to work at ASH for much longer because "they were going to get rid of him." *Id.* This statement, however, is hearsay and may not be relied upon to create a triable issue of fact or otherwise defeat a motion for summary judgment. *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) ("[W]hen an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay,

the statement may not be used to support or defeat a motion for summary judgment.") (citation omitted). Indeed, it is not admissible as an admission of a party-opponent because nothing in the record suggests that the employee was authorized by ASH to make this statement or that the statement concerned a matter within the scope of his employment. *See* Fed. R. Evid. 801(d)(2).

Finally, the following parts of the record are worth mentioning. First, Bonton testified that the conditions in the warehouse were poor. He stated that it was hot in the summer, cold in the winter, that the dust made it hard to breathe, and that the roof in the warehouse would leak. Bonton Dep. 36:17–18, 39:22–40:1. He asserts that his office was relocated, in part, in retaliation for complaining about these conditions. It stands to reason, however, that relocating from the warehouse to the finance department would actually be a positive change for Bonton, as he would no longer be subjected to the poor working conditions that were the subject of his prior complaints. When taken together with Bonton's accommodation and his prior use of hospital vehicles, nothing indicates that the move was an adverse employment action or objectively intolerable. Second, ASH was in the process of phasing out its use of the warehouse in favor of a supply-closet system. Def.'s Facts ¶ 24. Therefore, it seems that Bonton would eventually need to move his office from the warehouse, and he would no longer need to travel or work there. Third, Boton later asked Hollis if he could rescind his resignation. *Id.* ¶ 24. This action is inconsistent with Bonton's claim that his working conditions were so intolerable that he could not continue working at ASH and had no choice

8

but to resign.

For these reasons, Bonton fails to identify any adverse employment action, and it appears that he voluntarily left ASH because he was unhappy with the changes at the hospital and to his position. Even if he could identify an adverse employment action, his discrimination claims still fail as a matter of law for the reasons discussed below.

B.   Title VII

*1. Disparate Treatment*

To establish a prima facie case of race discrimination based on disparate treatment, Bonton must show that he (1) is a member of a protected class; (2) met the legitimate expectations of his employer; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees outside of his protected class. *Moyer v. DVA Renal Healthcare, Inc.*, 368 F. App'x 714, 716 (8th Cir. 2010) (citation omitted). "While '[t]he burden of establishing a prima facie case of disparate treatment is not onerous,' *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc), the plaintiff must be able to produce some evidence of similarity between [himself] and [his] comparator." *Rebouche v. Deere & Co.*, 786 F.3d 1083, 1087–88 (8th Cir. 2015).

Bonton asserts that he was treated differently than white employees, but he fails to show that the white employees were similarly situated to him. He states that white managers were given access to security cameras over areas of the hospital that they managed and that he was denied such access. Bonton Aff. at 2. He also asserts that none of the white

9

managers had to supervise their staff from a different building and that a particular white manager who worked in the warehouse did not have to relocate his office. *Id.* at 4. Bonton, however, fails to produce any evidence showing that he was similarly situated to these white managers in all relevant respects. *See Bones v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012). Similarly, he argues that Nicole Lewis, a white employee, was able to rescind her resignation while he was not allowed to do so. Bonton Aff. at 7. Again, Bonton does not offer any evidence showing that he was similarly situated to Lewis in all relevant respects. *See* Bonton Dep. 86:2–87:15. In fact, it appears that Lewis did not have the same supervisor as Bonton. *Id.*; Def.'s Facts ¶ 67; *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) (holding that comparators must have dealt with the same supervisor as the plaintiff).

## 2. Hostile Work Environment

To establish a prima facie case of discrimination based on a hostile work environment claim, Bonton must show, among other things, that the harassment affected a term, condition, or privilege of his employment. *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005). This requires a demonstration that the harassment was "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment as viewed objectively by a reasonable person." *O'Brien v. Dep't of Agric.*, 532 F.3d 805, 809 (8th Cir. 2008) (quotation omitted). To determine whether racial harassment is sufficiently severe or pervasive, the totality of the circumstances is considered, "including the frequency and severity of the discriminatory conduct; whether it is physically threatening

10

or humiliating, as opposed to a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Helton v. Southland Racing Corp.*, 600 F.3d 954, 959 (8th Cir. 2010) (quotation omitted).

After viewing the evidence in the light most favorable to Bonton, he fails to present evidence showing that the alleged racial harassment was sufficiently severe or pervasive. First, Bonton claims that ASH managers and personnel made discriminatory remarks towards him. Specifically, he states that he was confronted about his staff members' "meeting etiquette" and "behavior." Bonton Aff. at 3. Moreover, after he gave notice of his resignation, his coworkers stated during a staff meeting that he could be a "Mr. Mom" and "sit at home and braid [his] little girls' hair." *Id.* at 6. These offhand and isolated comments do not create a hostile work environment. *See Burkett v. Glickman*, 327 F.3d 658, 662 (8th Cir. 2003); *Singletary*, 423 F.3d at 893.

Next, Bonton asserts that Hollis failed to communicate with him concerning "major changes" in the warehouse on account of Bonton's race. Bonton asserts that Hollis preferred communicating with white managers; that there was confusion when Tammie Wyatt, who is white, was listed as warehouse manager in the ASH directory; that Hollis hired staff for Bonton's department without consulting Bonton; and that Hollis failed to inform Bonton whether Wyatt was replacing him. Bonton Aff. at 2–4. Again, even when considered with the discriminatory remarks, Hollis's conduct did not create a hostile work environment. *See, e.g.*, *Bradley v. Widnall,* 232 F.3d 626, 631–32 (8th Cir. 2000) (holding that plaintiff's

11

allegations that she was left out of the decision-making process, was treated disrespectfully, was subjected to false complaints, and had her supervisory duties curtailed were insufficient to support a hostile work environment claim). While these issues were likely frustrating to Bonton, they are not sufficiently pervasive or severe to sustain a hostile work environment claim.

### 3. Retaliation

To establish a prima facie case of retaliation under Title VII, Bonton must show that (1) he engaged in protected activity; (2) ASH took an adverse employment action against him; and (3) a causal connection exists between the two. *Bonn v. City of Omaha*, 623 F.3d 587, 590–91 (8th Cir. 2010). Critically, Title VII only prohibits an employer from retaliating against an employee for his opposition to an employment practice that violates the statute. *Id.* at 591.

Bonton's retaliation claim fails because he did not engage in protected activity under the statute. He asserts that Hollis and others at ASH retaliated against him after he made complaints concerning the physical environment in the warehouse and for violations of DHS policies. Pl. Br. Opp'n Mot. Summ. J. at 1–2, 10–12. Specifically, Bonton complained that the warehouse was too hot in the summers, too cold in the winters, that dust made it hard for workers to breathe, and that the roof leaked. Bonton Dep. 36:17–18, 39:22–40:1. While these conditions may have been poor, his complaints about the warehouse do not concern discrimination against a protected class or Bonton's access to Title VII's remedial scheme.

*See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006). Similarly, to the extent that he asserts a Title VII retaliation claim for reporting alleged mishandling of mail, poor safety of vehicles, and violations of other DHS policies, his claim fails for the same reason. *See* Pl. Br. Opp'n Mot. Summ. J. at 1–2.

    C.    <u>ADA Claims</u>

*1. Disability Discrimination*

To establish a prima facie case of discrimination under the ADA, Bonton must show that (1) he has a disability under the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) he suffered an adverse employment action due to a disability. *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 518 (8th Cir. 2011). Even if it is assumed that Bonton is disabled under the ADA, for the reasons discussed above, he fails to show that he suffered any adverse employment action on account of his disability.

*2. Failure to Accommodate*

To establish a prima facie case for a failure to accommodate under the ADA, Bonton must show that (1) ASH knew about his disability; (2) Bonton requested accommodations for his disability; (3) ASH did not make a good-faith effort to assist him with accommodations; and (4) reasonable accommodations were available but for ASH's lack of good faith. *E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014).

Bonton fails to establish his prima facie case because it is undisputed that he received

reasonable accommodations for his disability. *See* Bonton Dep. 68:3–13, 74:12–24; *see also* Def. Statement of Facts Ex.1 at 76. Although he later asserts in an affidavit that Hollis and others rescinded these accommodations when his office was moved to the finance department, Bonton "cannot create an issue of material fact merely by contradicting [his] earlier statements." *Planned Parenthood of Minn./S.D. v. Rounds*, 372 F.3d 969, 973 (8th Cir. 2004) (citation omitted). Further, while Bonton may not have received the exact accommodation that he would have liked, ASH "is not required to provide the specific accommodation requested or preferred by an employee." *Scruggs v. Pulaski Cty., Ark.*, 817 F.3d 1087, 1093 (8th Cir. 2016) (citation omitted). Finally, that ASH may have required Bonton to obtain a second or updated medical opinion and go through the interactive process twice does not mean, as a matter of law, that he was denied accommodations under the statute. *See Wenzel*, 404 F.3d at 1043.

## IV. CONCLUSION

For the foregoing reasons, ASH's motion for summary judgment [Doc. No. 35] is granted, and the case is dismissed with prejudice.

IT IS SO ORDERED this 11th day of September 2018.

_____
UNITED STATES DISTRICT JUDGE